IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN LEE DELEA, | : Civil No. 1:25-CV-432 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

## I. Introduction

On May 6, 2020, Susan Delea filed an application for disability and disability insurance benefits, as well as supplemental security income under Titles II and XVI of the Social Security Act. A hearing was held before an Administrative Law Judge ("ALJ"), who found that Delea was not disabled from her alleged onset date, January 4, 2019, through March 14, 2024, the date the ALJ issued his decision.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

Delea now appeals this decision, arguing that the decision is not supported by substantial evidence.  After a review of the record, we agree and conclude that the ALJ's decision is not supported by substantial evidence.    Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

On May 6, 2020, Susan Delea applied for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to ruptured lumbar discs, severe thoracic stenosis, post-traumatic stress disorder ("PTSD"), depression, and spinal stenosis.  (Tr. 109).  Delea was 44 years old on her alleged onset date of disability, had at least a high school education, and had past work as a waitress.  (Tr. 40).

The medical records[2] underlying Delea's appeal revealed that Delea treated for her mental health issues, including bipolar depression, generalized anxiety disorder, and borderline personality disorder prior to

---

[2] Because Delea's appeal focuses primarily on her mental health impairments, we accordingly limit our discussion of the medical records to those impairments.

the relevant period. (Tr. 727-63). At a May 2018 mental health visit, her mental status examination revealed rambling speech, fair attention and concentration, fair to poor insight and judgment, and intact thought processes. (Tr. 749). In February of 2020, Delea was brought to the emergency department at Bay Medical Beach after her apartment complex manager reported her "go[ing] on a strange rampage." (Tr. 908). On examination, she exhibited flight of ideas, increased psychomotor agitation, and poor insight. (Tr. 909). It was also noted that Delea believed and insisted she had suffered a stroke, which was belied by imaging. (Tr. 912). Delea was discharged but was brought back the following day, after she attempted to overdose on her prescription medications. (Tr. 901).

Following Delea's suicide attempt, she was admitted for inpatient treatment at Fort Walton Beach Medical Center. (Tr. 959). Treatment notes from this facility indicate that during Delea's admission, providers spoke with Delea's sister, who revealed Delea's history of medication abuse, manipulation, and lying. (Tr. 963). It was also noted that Delea exhibited strong characteristics of borderline personality disorder,

including emotional reactions and declining her medications at times. (*Id.*). Delea was discharged after eight days, and treatment notes indicate that while she was advised to continue with treatment, she stated that she likely would not. (Tr. 964-65).

Delea underwent a mental status evaluation with Dr. Brett Hartman, Psy.D., in August of 2020. (Tr. 1153-65). Delea reported three prior psychiatric hospitalizations, and that her primary care provider was managing her medication. (Tr. 1154). She further reported difficulty sleeping, as well as feelings of sadness, hopelessness, loss of interests, and irritability. (*Id.*). Delea stated that she also experienced manic episodes, followed by depression. (Tr. 1155). A mental status examination revealed clear and fluent speech; coherent thought processes; a depressed mood; intact attention, concentration, and memory; and fair to poor insight and judgment. (Tr. 1156-57). Dr. Hartman opined that Delea had marked limitations in interacting appropriately with the public, as well as moderate limitations in understanding, remembering, and carrying out complex instructions. (Tr. 1159-61).

Delea then underwent a psychiatric evaluation with Certified Registered Nurse Practitioner ("CRNP") Eileen Arenson in October. (Tr. 1168). NP Arenson noted Delea's history of mental health issues and her February inpatient hospitalization. (*Id.*). Delea reported feeling more depressed than manic, and that she experienced hearing voices. (*Id.*). On examination, her memory and attention were intact, she exhibited no psychomotor agitation but did exhibit paranoia, and her insight and judgment were poor to fair. (Tr. 1169). NP Arenson diagnosed Delea with schizoaffective disorder and started her on new medications. (*Id.*). At a follow up appointment in December, she reported she stopped taking her medications because she was gaining weight. (Tr. 1172). She told NP Arenson that she was in a "bad way" and was thinking about going to the emergency room. (*Id.*).

Delea reported increased anxiety to NP Arenson in February of 2021 due to living with her ex-mother-in-law. (Tr. 1505). In March, Delea was admitted to Wayne Memorial Hospital after she presented to the emergency room in a manic psychotic state. (Tr. 1477). It was noted that Delea was with her sister and exhibited confusion, delusions, and

was not making sense. (*Id.*). She was ultimately transferred to First Hospital, an inpatient facility. (Tr. 1486, 1488). At her intake at First Hospital, Delea was tearful and exhibited pressured and loud speech. (Tr. 1639). She reported that she was not taking her prescribed medications. (*Id.*). On examination, Delea had difficulty maintaining eye contact and exhibited paranoia and delusional thinking. (Tr. 1640). The provider noted that Delea "seem[ed] to have extreme thoughts of wanting to get her life straightened out" but was "lacking insight and judgment about [the] need to adhere to [her] medications . . ." (Tr. 1640-41). Delea's discharge paperwork indicated that her mental status was improved, and she was advised to comply with her medication regimen. (Tr. 1636-37).

After Delea was discharged from treatment, she followed up with Greentown Medical Center seeking therapy and a CT scan. (Tr. 1493). Provider notes indicate that she was having issues with her ex-mother-in-law, with whom she was living and who left Delea at her appointment with no ride home. (*Id.*). Several days later, Delea presented to the emergency room via EMS after she had barricaded herself in her room when her landlord tried to evict her. (Tr. 1507). Emergency department

notes indicate that Delea's family requested an inpatient admission after she was seen vomiting and throwing feces out of her window. (Tr. 1524). Following her discharge from treatment, Delea was seen by NP Arenson, who noted Delea's condition had improved, and she was obtaining new housing. (Tr. 1509). In May, Delea continued to report improvement, but in June, it was noted that Delea experienced delusions and was not feeling well. (Tr. 1614, 1616).

NP Arenson filled out a mental residual functional capacity ("RFC") assessment in September of 2021. (Tr. 1627-30). NP Arenson opined that Delea had mild to moderate functional limitations from her mental health impairments. (*Id.*). She further opined that Delea's impairments would interfere with her ability to work on a regular and sustained basis, or that she would be off-task 20 percent of the time. (Tr. 1630). Timothy Gladson, Delea's counselor who treated her on a weekly basis, also filled out a mental RFC assessment around this time. (Tr. 1631-34). Gladson opined that Delea had marked limitations in her ability to remember locations and work-like procedures, carry out detailed instructions, maintain attention and concentration for extended periods, and complete

7

a normal workday without interruptions from her symptoms. (*Id.*). Like NP Arenson, Gladson further opined that Delea would be off-task 20 percent of the time due to her impairments. (Tr. 1634).

Delea continued to treat with NP Arenson in September of 2021, at which time she reported an even mood, and that she had custody of her 14-year-old daughter. (Tr. 2467). Her mental status examination at this visit was unremarkable, and she started Invega injections. (*Id.*). But in October, NP Arenson noted that Delea was hospitalized for three days after an attempted overdose involving medications and cutting herself when her daughter's father was granted temporary custody. (Tr. 2469). Delea reported that she was getting up in the middle of the night to walk, and that she might be experiencing delusions. (*Id.*). NP Arenson noted in November that Delea opted to stop Invega injections and was more depressed but did not feel manic. (Tr. 2471). After discussing her two inpatient admissions in the last year, NP Arenson started Delea on Cymbalta, which worked for her in the past. (*Id.*). However, at a follow up in December, Delea reported stopping Cymbalta due to headaches but

that she was using medical marijuana, which seemed to help her sleep and anxiety. (Tr. 2473).

Delea's treatment with NP Arenson was more sporadic in 2022. Thus, in April, NP Arenson noted it had been three months since Delea's last visit, and that she was experiencing a lower mood. (Tr. 2475). Delea stated she was not interested in starting any new medications. (*Id.*). Delea reported back to Arenson in December, eight months later, advising that she had been off all medications and requesting to restart medications, as she was not sleeping. (Tr. 2477). In January of 2023, Delea reported that her cat died, and that she was dog sitting a dog who had to be put down. (Tr. 2481). NP Arenson noted that Delea was more anxious but did not exhibit evidence of mania or psychosis. (*Id.*). Delea stated that she was not sleeping well, her appetite was worse, and she was not feeling her "usual self." (*Id.*). At a follow up visit two weeks later, Delea reported focus and concentration issues, as well as forgetting things. (Tr. 2483).

Delea continued to treat with NP Arenson throughout 2023, during which time Delea reported periods of improvement as well as periods of

increased depression and anxiety and memory and concentration issues. (Tr. 2485-91). But in May, NP Arenson noted that Delea had stopped taking all medications, which she had done in the past, and was experiencing increased anxiety. (Tr. 2493). Delea restarted her medications in June, which she reported somewhat improved her anxiety. (Tr. 2495).

Delea was hospitalized in September of 2023 after her caseworker reported abnormal behavior consistent with Delea stopping her medications. (Tr. 1895, 2103). On examination, Delea's appearance was unkempt and disheveled, she displayed psychomotor agitation and idiosyncratic movements, her speech was slow, and she exhibited delusions. (Tr. 2104). She was admitted to the inpatient psychiatric unit for stabilization. (Tr. 2105). Following this inpatient admission, NP Arenson noted that Delea was complying with her medications and was feeling better overall. (Tr. 2499).

NP Arenson filled out an updated mental RFC assessment in December of 2023. (Tr. 2503-06). NP Arenson opined that Delea had extreme limitations in her ability to understand, remember, and carry

out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine, and tolerate normal levels of stress. (*Id.*). She further opined that Delea had marked limitations in her ability to make simple, work-related decisions, accept instructions and respond to criticism from supervisors and changes in the work setting. (*Id.*). NP Arenson further noted that Delea would be off-task at least 20 percent of the time. (Tr. 2506).

The ALJ conducted an initial hearing on September 9, 2021, during which Delea and a vocational expert testified. (Tr. 50-80). The ALJ denied Delea's application for benefits. (Tr. 201-26). The Appeals Council remanded the matter to the ALJ to further consider the opinion evidence, after which the ALJ then held a second hearing. (Tr. 81-90, 229). Following the second hearing, on March 14, 2024, the ALJ issued a decision denying Delea's application for benefits. (Tr. 14-49).

At Step 1 of the of the sequential analysis that governs Social Security cases, the ALJ concluded that Delea did not engage in substantial gainful activity since her alleged onset of disability, January 4, 2019. (Tr. 20). At Step 2, the ALJ found that Delea suffered from the

11

following severe mental health impairments: borderline personality disorder, schizoaffective disorder, bipolar disorder, and PTSD. (*Id.*). At Step 3, the ALJ concluded that none of Delea's severe impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 21-26). Specifically, the ALJ found that Delea had moderate limitations in the four broad areas of mental functioning. (*Id.*).

Between Steps 3 and 4, the ALJ concluded that Delea:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

The claimant is limited to standing and walking 4 out of every 8 hours. Further, the claimant can occasionally climb ramps and stairs; balance; stoop; kneel; crouch and crawl; but may never climb ladders, ropes, or scaffolds. Additionally, the claimant can work at unprotected heights and be exposed to moving mechanical parts occasionally, and frequently operate a motor vehicle and be exposed to weather; humidity; wetness; dust, odors, fumes and pulmonary irritants; extreme cold; extreme heat; and vibrations. Moreover the claimant is able to perform simple, routine, and repetitive tasks but not at a production rate pace such as what occurs on an assembly line. Also she is able to perform simple work-related decisions; frequently interact with supervisors and the public: and is able to tolerate occasional changes in a routine work setting.

(Tr. 27).

12

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Delea's reported symptoms. (Tr. 27-39). With respect to the medical opinion evidence regarding Delea's mental health impairments, the ALJ considered Dr. Hartman's August 2020 opinion and found it partially persuasive. (Tr. 35). The ALJ reasoned that the part of the opinion supporting an unskilled, simple tasks RFC was supported by the record, but that Dr. Hartman's marked limitations were not consistent with the longitudinal record or his own examination findings. (*Id.*). The ALJ found that those portions of Dr. Hartman's opinion were based on Delea's subjective complaints. (*Id.*).

The ALJ then considered the state agency reviewing opinions from Dr. Cloutier and Dr. Rattan and found these opinions generally persuasive. (Tr. 35). Both opinions found that Delea was moderately limited in the four areas of functioning, and that she could perform one-to-two step and simple, routine, repetitive tasks. (Tr. 132-33, 136-38, 155-56, 162-66). The ALJ reasoned that these opinions were consistent with the record to the extent they found only moderate limitations in

13

mental functioning. (Tr. 36). However, the ALJ explicitly rejected the one-to-two step tasks limitation, finding that such a limitation was inconsistent with Delea's activities of daily living. (*Id*.).

The ALJ also considered the two opinions from NP Arenson from September of 2021 and December of 2023, respectively. (Tr. 36-37). As to the September 2021 opinion, the ALJ found it partially persuasive to the extent it was consistent with the moderate limitations in the RFC. (Tr. 37). However, the ALJ declined to adopt Arenson's marked limitations and opinion regarding time off-task, as he found these limitations were not supported by the record or consistent with Arenson's examination findings. (Tr. 38). As to Arenson's December 2023 opinion, which contained both marked and extreme limitations in several areas, the ALJ similarly discounted these limitations, reasoning that they were not supported by the record. (Tr. 36-37).

The ALJ then considered the opinion of Timothy Gladson, Delea's counselor, and found it partially persuasive. (Tr. 38). Similar to Arenson's opinion, the ALJ found that the moderate limitations in this opinion were supported by the record but declined to adopt the marked

limitations and opinion regarding time off-task, finding that these limitations were not supported by the longitudinal record or the provider's own findings.  (*Id.*). In his consideration of all of the opinion evidence, the ALJ appeared to rely on mental status examinations in the record showing no more than moderate findings, as well as Delea's activities of daily living, which included driving, performing household chores, using a smartphone, and caring for her daughter.  (Tr. 35-39).

The ALJ also considered Delea's symptoms, but ultimately found that the statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 27-34).  Delea testified at the first hearing that she had problems with concentration, focus, and comprehension, but that she could use a smartphone and shop online.  (Tr. 66-67).  She reported an ability to perform personal care, but that she could not go to grocery stores and had her groceries delivered due to panic attacks.  (Tr. 69). Regarding her schizoaffective disorder, Delea stated that she experienced delusions and periods of "rage," and she discussed the circumstances of her mental health inpatient hospitalizations throughout the alleged

disability period. (Tr. 72-74). At the second hearing, Delea discussed her September 2023 mental health hospitalization. (Tr. 88-89).

The ALJ found Delea's statements were not entirely consistent with the medical records. (Tr. 27-34). The ALJ noted that Delea had several inpatient hospitalizations throughout the relevant period but further noted that many of her admissions indicated she was not taking her medications. (Tr. 31-32). The ALJ then considered Delea's history of mental health treatment, which he characterized as routine with moderate to unremarkable mental status examination findings. (Tr. 32). The ALJ also considered Delea's activities of daily living, which included performing personal care and household chores, driving, shopping, and using a smartphone. (Tr. 34). Ultimately, while the ALJ noted some limitations in performing these activities, he found that the record did not support Delea's allegations of disabling symptoms. (Tr. 34).

Having made these findings, at Step 4 the ALJ found that Delea could not perform her past work but found at Step 5 that Delea could perform jobs in the national economy, such as an office helper, order caller, and ticket seller. (Tr. 40-41). Accordingly, the ALJ found that

16

Delea had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 41).

This appeal followed. On appeal, Delea argues that the ALJ erred in his consideration of the opinion evidence and failed to include adequate mental limitations in the RFC. After consideration, we conclude that the ALJ's opinion is not supported by substantial evidence. Accordingly, we will remand this matter to the Commissioner for further consideration.

## III.  Discussion

### A. Substantial Evidence Review – the Role of This Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated*

18

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether Delea is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.

2005)). Thus, we cannot reweigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether Delea: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her

age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine Delea' residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all Delea' medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of the analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

Delea bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that Delea can perform consistent with

22

Delea' RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in May of 2020 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to

be the gold standard.    However, in March of 2017, the regulations governing the treatment of medical opinions were amended.  Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or

25

examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. The ALJ's Decision is Not Supported by Substantial Evidence.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

The plaintiff sets forth four arguments in support of her position that the ALJ's decision is not supported by substantial evidence, all concerning the ALJ's treatment of the medical opinion evidence. Three of those arguments pertain to the ALJ's failure to adopt a limitation to simple instructions or one-to-two-step tasks, and the fourth relating to the ALJ's treatment of the opinions finding Delea would be off-task at least 20 percent of the time. (Doc. 10). After consideration, we conclude that the ALJ's treatment of the opinion evidence as a whole is not adequately explained and, therefore, is not supported by substantial evidence.

As the plaintiff notes, all of the medical opinions of record contained some limitation regarding Delea's ability to understand, remember, and carry out detailed instructions. Dr. Hartman's August 2020 opinion found a moderate limitation in this area; the state agency consultants

limited Delea to one-to-two step tasks, or short, simple instructions; Gladson found marked limitations in Delea's ability to carry out detailed instructions; and Arenson's 2023 opinion noted an extreme limitation in this area. (Tr. 35-39). The ALJ explicitly discounted the state agency consultants' one-to-two-step task limitation based on Delea's activities of daily living, noting that her "ability to drive[,] do simple household chores[,] use a computer and smart phone[,] care for her daughter[,] and make simple meals" all involved more than one to two steps. (Tr. 36). As to the other opinions, the ALJ discounted these limitations in a cursory fashion, indicating that these limitations "are not consistent with the longitudinal record for the same reasons which support limiting the claimant to unskilled work." (Tr. 37, 39). But "[t]he definition of 'unskilled work' does not specify what level of instructions a worker must be able to follow." *Booker v. Colvin*, 2017 WL 914911, at *6 (E.D. Pa. Mar. 7, 2017). In fact, some unskilled work may require the plaintiff to understand, remember, and carry out detailed instructions. *Id.* (citing *Smith-Schaeffer v. Comm'r of Soc. Sec.*, 2013 WL 1962668, at *7 (W.D. Pa. May 10, 2013) (""[T]he definition of unskilled work *may* arguably

encompass plaintiff's limitations with respect to carry out detailed instruction....") (emphasis added)).

Here, every medical opinion contained some limitations with respect to Delea's ability to understand, remember, and carry out detailed instructions. The ALJ appears to have discounted those limitations primarily because he found the plaintiff was limited to unskilled work. But as we have noted, unskilled work may encompass the need to carry out detailed instructions. Indeed, the jobs identified by the ALJ at Step 5 require a reasoning level 2, which requires an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DICOT 239.567-010, 1991 WL 672232 (Office Helper); DICOT 209.667-017, 1991 WL 671807 (Order Caller); DICOT 211.467-030, 1991 WL 671853 (Ticket Seller). Based on the above, we cannot conclude that the ALJ's explanation for discounting these providers' limitations—that the evidence supported a limitation to unskilled work—was adequately explained. As we have noted, while an ALJ is not required to accept every limitation set forth in an opinion that is found to be persuasive, the decision must adequately explain the

rationale behind the RFC determination.  *Durden*, 191 F. Supp. 3d at 455.  Without an adequate explanation by the ALJ as to why he discounted these providers' limitations concerning Delea's ability to understand, remember, and carry out detailed instructions, we cannot conclude that the ALJ's decision is supported by substantial evidence.

This error is further compounded by the ALJ's explanation for limiting the plaintiff to unskilled work.  The ALJ, in finding Delea limited to unskilled work, relied in part on the plaintiff's noncompliance with medication.  Indeed, the ALJ noted that while the plaintiff underwent several inpatient psychiatric admissions, the treatment notes from those admissions indicated that Delea was not taking her medications.  (Tr. 34).  The ALJ mentioned the plaintiff's noncompliance with medications both in discussing her inpatient admissions as well as in his explanation limiting the plaintiff to unskilled work.  (Tr. 31-34).  But despite relying on the plaintiff's noncompliance, there is no indication that the ALJ considered that Delea's mental health impairments could be the cause of her noncompliance.

One court in this circuit recently addressed a similar issue, ultimately remanding the matter to the ALJ for further consideration. *David A.C. v. O'Malley*, 2024 WL 3416254, at *5-8 (E.D. Pa. July 15, 2024). The court in that case detailed the plaintiff's history of noncompliance with medication, which resulted in several inpatient hospitalizations. *Id.* at 6. The court noted that the medical evidence revealed a pattern, whereby the "[p]laintiff discontinued his medications, his condition deteriorated, and he was hospitalized against his will. Only with intensive inpatient treatment—sometimes lasting weeks—and several different medications did Plaintiff stabilize." *Id.* The court then noted that the ALJ mentioned the plaintiff's noncompliance with treatment at various times in the decision denying his disability application but "never considered whether Plaintiff's inability to comply with his treatment plan was itself related to his mental health condition despite significant record evidence suggesting as much." *Id.* at 7. The court remanded the matter, reasoning that the ALJ was required to at least consider whether the plaintiff's impairments contributed to his noncompliance. *Id.* at 7-8.

We reach a similar conclusion here. The ALJ mentioned Delea's noncompliance with medication several times throughout the decision denying Delea's application. But the decision contains no consideration of whether Delea's severe mental health impairments, including bipolar and schizoaffective disorders, contributed to her medication noncompliance. This is troubling when considered in light of the medical record in this case, which appears to suggest that Delea's impairments may have contributed to her medication noncompliance. For example, treatment notes from Delea's February 2020 inpatient hospitalization indicate that Delea "exhibited very strong personality disorder traits. She would wax and wane in regards to the effectiveness of medications." (Tr. 964). Additionally, treatment notes from a March 2021 psychiatric evaluation at First Hospital noted that Delea was "still lacking insight and judgment about need[ing] to adhere to the medications that can help to stabilize her mood or her thought processes at this point." (Tr. 1641). Accordingly, given that the ALJ relied on Delea's noncompliance to discount some of the medical evidence, "it was incumbent upon the ALJ

32

to at least consider whether Plaintiff's mental illness contributed to [her] noncompliance." *David A.C.*, 2024 WL 3416254, at *7.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge


Date: August 21, 2025

33